## EASLEY *v.* STATE.

### Opinion delivered July 14, 1913.

1. APPEAL AND ERROR—VERDICT—CONFLICTING EVIDENCE.—A verdict of guilty will not be disturbed on appeal if there is any evidence of a substantial character to support it. (Page 134.)

2. HOMICIDE—APPEAL—HARMLESS ERROR.—Where the defendant was not convicted of murder in the first degree, an error in an instruction as to that degree is harmless and therefore not prejudicial. (Page 134.)

3. EVIDENCE—HEARSAY EVIDENCE.—Evidence that one witness told another witness that a third witness had told her that deceased fired a shot at defendant before defendant began firing, *held* hearsay. (Page 135.)

4. EVIDENCE—RES GESTAE.—In a trial for homicide, evidence that while defendant was shooting at deceased a bystander cried out, "My God, you have killed him! Don't shoot any more;" *held* competent as part of the *res gestae*. (Page 136.)

5. EVIDENCE—RES GESTAE.—Where defendant was on trial for homicide, under the plea of self-defense, evidence that he shot another person at the same time is admissible as part of the *res gestae*. (Page 136.)

6. TRIAL—ARGUMENT OF COUNSEL.—Where, upon objection to argument of the prosecuting attorney, the court admonished the jury to "just consider the evidence in the case, gentlemen," the re-

mark of the court removed any prejudicial effect of the argument.  (Page 137.)

7.  Trial—argument of counsel—objections and exceptions.—Counsel for the defense must not merely object to improper argument of the prosecuting attorney, but must save an exception if the court rules adversely or fails to rule at all.  (Page 137.)

Appeal from Lawrence Circuit Court, Eastern District; *R. E. Jeffery,* Judge; affirmed.

*O. C. Blackford* and *W. P. Smith,* for appellant.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee; *L. B. Poindexter* and *H. L. Ponder,* of counsel.

Hart, J.   Lon Easley was indicted for the crime of murder in the first degree, charged to have been committed by shooting Claibe Pinnell in Lawrence County, Arkansas.   He was tried at the same term of the court and convicted of the crime of murder in the second degree, his punishment being fixed by the jury at twenty-one years in the State penitentiary.   From the judgment of conviction he has duly prosecuted an appeal to this court.

A physician who examined the body of the deceased, Claibe Pinnell, after he was shot, testified that he found a hole about one inch below the eye on the left cheek where the bullet had entered.   That he made an opening in the back of his head and found the bullet.   That the bullet had punctured the top layer of his skull and was lodged in the muscles of his neck.   That it passed the base of the brain and cut the spinal cord in two where it went out and caused instant death.   Another witness for the State testified that he did not see the shooting but heard the shot fired; that just after the shooting he saw the defendant, Easley, and asked him what was the trouble and that Easley replied that he had just killed Claibe Pinnell.   That he afterwards saw Claibe Pinnell lying on the ground dead, in the town of Hoxie in Lawrence County.   The State here rested.   Lon Easley, the defendant, for himself, testified as follows:

Red Dempsey and Claibe Pinnell were together in

the town of Walnut Ridge on the night that I killed Pin-
nell. They were both drinking and went from Walnut
Ridge to Hoxie. I was town marshal and heard Red
Dempsey using profane language in front of a store
house. I arrested him, and, putting my left arm through
Dempsey's right arm, started off with him. Claibe Pin-
nell came running up behind us and said "wait." When
he got up to us he said, "You won't lock this man up,
nor no other man." Just as he said this he drew his
pistol and fired. I saw the pistol coming right up in my
face and struck it up with Red Dempsey's arm. Pin-
nell fired right by my face and my face was powder-
burned all over. He kept on firing, and the next shot I
think was the shot that hit Dempsey. I ran into the
street and Dempsey ran the other way. Pinnell kept
shooting at me, and I finally got my pistol out and com-
menced shooting at him. I did so because he was still
shooting at me and I thought he was trying to kill me.
I had a thirty-eight calibre Smith & Wesson pistol. Pin-
nell shot at me with a thirty-two calibre pistol. Pinnell
and I were good friends. When Pinnell fired at me I
swung Dempsey around and he fired again and hit Demp-
sey. Dempsey was not quite as close as Pinnell when
he was shot as I was when Pinnell shot at me.

Several other witnesses for the defendant testified
that they heard the shooting and that two or three shots
from the smaller pistol were fired first, and that they
then heard the reports from the larger pistol. The phy-
sician who extracted the bullet from the body of Red
Dempsey said that he gave the bullet to Red Dempsey
and that he thought it was a bullet from a thirty-two
calibre pistol. Several other witnesses for the defend-
ant testified that Claibe Pinnell and Red Dempsey were
drinking and conducting themselves in a boisterous man-
ner on the night that Pinnell was killed. That Pinnell's
reputation in that community where he had lived all his
life was that of being a dangerous and turbulent man,
especially when he was drinking.

In rebuttal, Red Dempsey was introduced as a wit-

ness in behalf of the State. In response to the question, "Did Claibe Pinnell make the statement to Lon Easley there at that time (referring to the time he was killed) he could not lock you or anybody else up?" and answered, "He did." Later on, in response to the questions asked by the prosecuting attorney, he stated that Pinnell came up to where he was in custody of the defendant and told the defendant that he (Dempsey) had not done anything, that the street car was coming and that if the defendant would turn him (Dempsey) loose they would take the car and go home. He also stated that the only thing Pinnell said to the defendant was that if he would turn him (Dempsey) loose they would catch the car and go back to Walnut Ridge. He also said that Pinnell did not shoot at the defendant until after the defendant had fired at him; that the defendant shot two or three times before Pinnell began firing. That he had stepped aside a few paces and during the shooting said to the defendant, "My God, you have killed him; don't shoot him any more."

The State also introduced wtinesses who testified that the reputation of the defendant for truth and morality in the community was bad. One witness testified that the defendant came in to his restaurant shortly after the killing and said, "I have got the damn son-of-a-bitch, but I don't know whether he shot me or not," or something like that. Another witness testified that on the night of the killing the defendant was in Walnut Ridge and he heard him say (referring to Pinnell and Dempsey) that if they went down to Hoxie that night they would never get back alive. It was also proved by the State that the defendant had been several times convicted of the illegal sale of whiskey.

Other testimony was introduced by the defendant tending to corroborate his statement and to contradict the testimony of Red Dempsey.

It is first earnestly insisted by counsel for the defendant that the evidence is not sufficient to warrant the verdict. We have not attempted to set out the evidence

in detail but believe that we have given the substance of it as favorably to the defendant as the record will warrant. It is not our duty to pass upon the credibility of the witnesses, and even though we might think that the preponderance of the evidence was greatly in favor of the defendant it is our duty to uphold the verdict if there is any evidence of a substantial character to support it. In this view of the case, we do not deem it necessary to enter into an extended discussion of the evidence. It is sufficient to say that if the evidence introduced by the State, which we have recited above, was believed by the jury, it was sufficient to show that the defendant was actuated by malice when he killed the deceased and the jury were warranted in finding him guilty of murder in the second degree and fixing his punishment at twenty-one years in the penitentiary.

Counsel for defendant next contend that "the court erred in placing him upon trial for murder in the first degree after the State had rested its case without proving premeditation and deliberation, and also that the court erred in instructing the jury as to murder in the first degree, over the objection of the defendant at the time." It is well settled that this court will only reverse a judgment for errors that are prejudicial to the rights of a defendant. As the defendant was only convicted of murder in the second degree, it is plain, whether the instructions on murder in the first degree were erroneous or not, they did him no harm. *Kilgore* v. *State,* 73 Ark. 280; *Rogers* v. *State,* 60 Ark. 76. The order of the admission of the testimony was a matter within the discretion of the trial court and the judgment will not be reversed unless an abuse of that discretion was shown. As we have already seen, the defendant was not convicted of murder in the first degree and the action of the court could not have resulted in any prejudice to him. Moreover, the record shows that the defendant saved no exceptions to the court's action in this regard but voluntarily placed his own witnesses on the stand at

the conclusion of the testimony given in behalf of the State.

Counsel for the defendant offered to prove by certain witnesses that Mrs. Claibe Pinnell, wife of the deceased, had stated to them that she had gone to see Red Dempsey, and, after telling him that he would probably not get well, asked him to tell the truth about the shooting of her husband by defendant; that Dempsey told her that deceased fired two shots at the defendant before the latter began firing. Mrs. Pinnell was a witness in the case and denied that she told Red Dempsey that the probabilities were that he would die and she denied that he told her that her husband shot at the defendant twice before the latter fired. She also denied that she had made the statements to the witnesses offered to be introduced in evidence by the defendant, as above stated. The court did not err in excluding the testimony, because it was hearsay. In discussing similar testimony in the case of *Sutherland* v. *State,* 76 Ark. 487, the court said:

"Lee Newman, a witness on behalf of the State, testified that he did not see the defendant cut deceased's throat, but that he told George Pruitt and George Burns that he did. Over the objection of appellant, witnesses George Pruitt and George Burns were permitted to testify in substance that Lee Newman told them that he saw defendant cut deceased's throat. This testimony of Pruitt and Burns was hearsay, and therefore incompetent. It was not in contradiction to anything the witness Newman had testified to, and was not therefore admissible to impeach such witness."

It is insisted that the court erred in allowing the prosecuting attorney to ask defendant if he did not shoot at Red Dempsey and that the latter hallooed at him and said, "For God's sake, don't kill him." The court did not err in this regard. In the first place, the defendant denied that Dempsey made any such exclamation, and, if he had answered that Dempsey had made such exclamation, it was competent as part of the *res gestae.* *Ford* v. *State,* 96 Ark. 582; *Childs* v. *State,* 98 Ark. 430.

Under the rule announced in these two cases the testimony of Dempsey to the effect that he hallooed to the defendant while he was shooting at Pinnell, "My God, you have killed him, don't shoot any more," was competent.

The court stated to the jury that they were not trying the defendant for shooting the witness Dempsey, and that the answers of the witness Dempsey in regard to that matter could only be considered in determining the question as to whether or not the defendant was acting in his necessary self-defense at the time the shooting was done and in determining the facts and circumstances surrounding the shooting of the deceased, Pinnell. That the testimony could only be considered as throwing light on that transaction. This ruling was in accord with the decision of *Childs* v. *State, supra,* where the court, in discussing a similar proposition, said:

"The defendant's brother was present the whole time and struck deceased as soon as the defendant ceased shooting him. It was all a part of one transaction, and it would be difficult to give a connected and correct account of the occurrence without stating all that was said and done concerning it. Under the law, all that occurred at the time and place of the shooting which had reference thereto or connection therewith was part of the *res gestae. Byrd* v. *State,* 69 Ark. 537. *Res gestae* are the surrounding facts of a transaction, explanatory of an act, or showing a motive for acting." *Carr* v. *State,* 43 Ark. 99.

The prosecuting attorney, in the course of his argument to the jury, said:

"The law doesn't compel you to find a motive. The State is not required to prove a motive. But if you are looking for a motive, suppose that Claibe Pinnell knew something on Lon Easley that would probably send him to the penitentiary." Upon objection being made to this argument, the court said, "Just consider the evidence in the case, gentlemen." If it be said that the argument of the prosecuting attorney was the statement

of a matter of fact not in evidence, the remarks of the court eliminated it from the consideration of the jury and cured any error caused thereby.

Counsel for the defendant also urge that the judgment should be reversed because of certain other remarks made by counsel for the State in his closing argument of the case. The objection made by counsel for defendant to the remarks is as follows:

"To which statement counsel for defendant at the time duly excepted, and requested that his exceptions be noted of record, which was accordingly done."

In the case of the *Kansas City Southern Railway Company* v. *Murphy,* 74 Ark. 256, the court said:

"From the above cases these propositions may be deduced: The control of argument is in the sound judicial discretion of the trial judge, and it is his duty to keep it within the record and within the legitimate scope of the privilege of counsel, and this he should do on his own initiative; if he fails to restrain counsel, then it is the right of opposing counsel to object to the argument. This should be a definite objection to the alleged improper remarks, and call for a ruling of the court thereupon, and if the court then fails to properly restrain and control the argument within its proper bounds, and to instruct the jury to disregard any improper remarks and admonish the counsel making it, then an exception should be taken to the action of the court. A mere exception to argument interposed to make a record in the appellate court, and not calling for a ruling of the trial court, is insufficient."

The ruling there made has been uniformly adopted by the court in its subsequent decisions, and, among them, we cite the following: *Bell* v. *State,* 84 Ark. 128; *American Insurance Co.* v. *Haynie,* 91 Ark. 43; *Fogel* v. *Butler,* 96 Ark. 87. In the application of the rule it will be seen that counsel for the defendant contented themselves merely with an exception to the remarks of counsel for the State and did not ask a ruling of the court on their objections, and there is nothing presented for

our review in this regard. Counsel should first have made an objection which called for a ruling of the court, and if the court ruled adversely to them or failed to rule at all, they should have saved an exception to the action of the court in this regard. Then the matter would be properly here for review.

The judgment will be affirmed.