## PAUL *v.* STATE.

Opinion delivered July 10, 1916.

1. HOMICIDE—VOLUNATRY MANSLAUGHTER.—The evidence held suficient to sustain a conviction for voluntary manslaughter.

2. EVIDENCE—DYING DECLARATIONS.—The admissibility of dying declarations is for the court to determine; their credibility, when admitted, is for the jury.

3. EVIDENCE—DYING DECLARATIONS.—Whether declarations were made under a sense of impending death, so as to render them admissible as dying declarations, is a preliminary question for the trial court, and its finding will not be disturbed if there is evidence to support it.

4. EVIDENCE—DYING DECLARATIONS—CONSCIOUSNESS OF IMPENDING DEATH.—It is not necessary that the declarent should state expressly that declarations made by him are made under a consciousness of impending death, and such a consciousness may be inferred from his wounded condition and evident danger, from expressions or statements made to him or in his hearing by physicians or others in attendance, from his manner and conduct, and other circumstances.

5. EVIDENCE—DYING DECLARATIONS.—Where deceased stated "I will never go home alive; I am bound to die," declarations made by him may be admitted as dying declarations.

6. APPEAL AND ERROR—CAUSE FOR REVERSAL.—A judgment will be reversed for errors only which are prejudicial to the defendant's rights.

7. TRIAL—REMARKS OF COUNSEL—DUTY TO EXCEPT.—If the trial court fails to control the argument of counsel within proper bounds, and fails to instruct the jury to disregard the improper remarks, an exception should be taken to the ruling of the court, and where no exception is saved, the appellant cannot complain on appeal.

8. NEW TRIAL—NEW EVIDENCE.—Motions for new trials upon the ground of newly discovered evidence which is cumulative merely, are addressed to the sound discretion of the trial court, and the exercise of this discretion will not be disturbed on appeal unless it is apparent that it has been abused.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. J. Driver*, Judge; affirmed.

*L. L. Collins*, of Springfield; Mo., for appellant.

1.  Incompetent, irrelevant and immaterial evidence was admitted. The statements admitted were not "dying declaration," nor admissible as such. 21 Cyc. 976; 2 Ark. 229; 20 *Id.* 36; 81 *Id*, 417; 126 Ill. 81; 69 Kans. 767; 1 Wharton Cr. Ev. 556 et seq; 74 Ala. 9; 11 Ga. 353; 63 Ind. 548; 50 Mo. 370; 21 Cyc. 979; 98; and cases cited, etc.; 164 S. W. 275; 8 R. C. L. 8.

2.  Guilt is never presumed—it must be proven. The court erred in its charge as to murder.

3.  The Prosecuting Attorney's remarks were highly prejudicial.

4.  The court erred in overruling the supplemental motion for new trial. The verdict is against the law and the evidence.

*Wallace Davis*, Attorney General, and *Hamilton Moses*, Assistant, for appellee.

1.  There was no prejudicial error in the "dying declarations" of the deceased. They were properly admitted, having been made *"in extremis."* 1 Bishop Crim. Proc., §1216; 37 Tex. 366; 51 Mo. 160; 38 Ark. 508; 2 *Id.* 229; 246-7; 58 Ark. 54; 81 *Id.* 419; 1 Greml. Ev. (16 ed.) §158.

2.  There was no error in the court's instructions. If any were wrong it was appellant's duty to tender correct instructions on the particular points contended for. This he failed to do and the verdict was for a lower grade of homicide than charged. 60 Ark. 76; 76 *Id.* 84; 73 *Id.* 280; 99 *Id.* 591; 54 *Id.* 4; 58 *Id.* 513; 102 *Id.* 199.

3.  The record is silent as to the prosecuting attorney's remarks. But the control of such arguments is within the discretion of the court below, and unless a clear abuse of discretion is shown, this court will not reverse. 74 Ark. 256; 95 *Id.* 326; Thompson on Trials. §964; 91 Ark. 95; 74 *Id.* 286; 100 I*d.* 108.

4. The new trial was properly refused. No abuse of discretion was shown. 96· Ark. 400; 103 *Id.* 589; 97 *Id.* 92; 85 *Id.* 179; 85 *Id.* 184; 99 *Id.* 125.

HART, J. Ollie M. Paul was indicted for murder in the first .degree, charged to have been committed by shooting Joe Bracken. He was tried before a jury and found guilty of voluntary manslaughter, his punishment being fixed at imprisonment in the state penitentiary for seven years.

From the judgment ·of conviction the defendant has duly prosecuted an appeal to this court.

The facts as detailed by the witnesses for the State are substantially as follows:

Joe Bracken lived in Mississippi County, Arkansas, and owned a farm near the farm of the defendant's father. Joe Bracken was shot on the 10th day of October, 1915, by Ollie M. Paul on the farm of his father in the Chickasawba District of Mississippi County, Arkansas, and died in about twenty-four days thereafter as the result of his wounds.

On the morning of the killing, one of Bracken's brothers gave him a quart of whiskey but according to the testimony of another brother he never drank any of it. Two of Bracken's brothers were near by when the shooting occurred but did not see it. They stated they heard two shots from a large gun and then they heard a shot from a smaller one. Then they ran to the scene and found their brother and the defendant clinched and each one claimed that the other had shot him. One of the brothers took charge of the deceased and the other of the defendant. The deceased had a thirty-two caliber pistol. The defendant had a thirty-eight caliber pistol. The defendant first claimed that the deceased had shot him but an examination of his body showed that he was mistaken. The pistol of the defendant was empty, all of the cartridges in it having been fired. It was also shown in evidence that the ·deceased on the night that he died, stated that the defendant had shot at him first and had shot him when he had both hands up.

Another witness testified that he heard the shooting and that the first and second shots were louder. He said he knew the kind of pistol Joe Bracken had and it was thirty-two-twenty and the defendant had a thirty-eight special.

Another witness testified that a short time before the shooting, he met the defendant and he had a pistol in his hand.

(1) According to the testimony of the defendant himself and other witnesses introduced in his behalf, he had had a difficulty with the deceased on the morning preceding the shooting and the deceased without cause had slapped him. That he met the deceased again in the afternoon; that the deceased was drinking heavily and renewed the difficulty; that he did not pull his pistol out and fire until deceased had first shot at him. It is not necessary to abstract the testimony in behalf of the defendant in detail. It is sufficient to say that if believed by the jury it showed that the defendant shot the deceased in his necessary self defense. The jury however, was the sole judge of the credibility of the witnesses. By its verdict it has said that it did not believe the testimony of the defendant and his witnesses and that it did believe the witnesses for the State. The testimony of the witnesses for the State was sufficient to warrant the jury in finding the defendant guilty of voluntary manslaughter. The defendant had the larger pistol and according to the testimony of the witnesses, the larger pistol was fired twice before any report was heard from the smaller one. Then, too, according to the dying declaration of the deceased, he was shot while he had his hands up.

(2) It is next insisted that the court erred in admitting the dying declarations of the deceased; but we do not agree with them in this contention. The admissibility of dying declarations is for the court to determine; their credibility, when admitted, is for the jury.. *Fogg* v. *State*, 81 Ark. 417.

(3-4) Whether declarations were made under a sense of impending death, so as to render them admissible as dying declarations, is a preliminary question for

the trial court, and its finding will not be disturbed if there is evidence to support it. *Robinson* v. *State*, 99 Ark. 208; *Jones* v. *State*, 88 Ark. 579. While dying declarations to be admissible must be made under consciousness of impending death and without expectation or hope of recovery, it is not necessary that the declarant should expressly state that they are so made, but it may also be inferred from his wounded condition and evident danger, from expressions or statements made to him or in his hearing by physicians or others in attendance, from his manner and conduct, and other circumstances. *Rhea* v. *State*, 104 Ark. 162.

(5) After the deceased was shot he was carried to Memphis and placed in a hospital and lived for twenty-four days. On the night that he died, a cousin went out to the hospital to see him at about midnight; he asked Bracken how he felt. Bracken told him he was feeling some better and his cousin then told him if he was feeling better possibly he would soon be able to go home. Bracken then said, "No he was about to die; no possible chance for him." He then requested his cousin to send a telegram for his wife before he died. He said to his cousin, "I will never go home alive; I am bound to die."

It was in this connection that he told his cousin that the defendant shot him first and had shot while his hands were up. This testimony warranted the court in finding that the declarations were made under a sense of impending death so as to render them admissible as a dying declaration.

(6) It is next contended that the court erred in giving certain instructions relating to murder in the first degree and murder in the second degree. We need not consider the objections to these instructions. It is well settled that this court only reverses a judgment for errors prejudicial to the rights of the defendant. The defendant was only convicted of voluntary manslaughter and it is plain that whether the instructions complained of were erroneous or not they did him no harm. *Easley* v *State*, 109 Ark. 130.

(7) It is next contended that the court erred in not excluding from the jury certain remarks made by the prosecuting attorney. The record is silent on this matter. It does not contain the remarks of which complaint is made. If the court fails to control the argument within proper bounds and to instruct the jury to discard the improper remarks, an exception should be taken to the ruling of the court. Not having done so, the defendant cannot complain here. *K. C. Sou. Ry. Co.* v. *Murphy,* 74 Ark. 256: *Decker* v. *Laws.* 74 Ark. 286; *Powell* v. *State,* 74 Ark. 355; *St. L., I. M. & S. R. Co.* v. *Brown,* 100 Ark. 108.

(8) Finally it is insisted that the court erred in refusing to grant defendant a new trial for newly discovered evidence. One of the attorneys for the defendant stated on oath that he went to Caruthersville, Missouri, after the trial and learned from O. H. Harris that the deceased had told him that he brought the trouble on himself; that he was drinking and that Ollie Paul was not to blame. This evidence was cumulative merely and it is well settled that motions for a new trial upon the ground of newly discovered evidence which is cumulative merely, are addressed to the sound discretion of the trial court, and the exercise of this discretion will not be disturbed on appeal unless it is apparent that it has been abused. *Ward* v. *State,* 85 Ark. 179; *Osborne* v. *State,* 96 Ark. 400; *Russell* v. *State,* 97 Ark. 92.

The record shows that the case was submitted to the jury upon proper instructions, covering every phase of the case, and that the defendant had a fair trial. We do not find any prejudicial errors in the record, and the judgment will be affirmed.