LEOTIS BREWER *v.* STATE OF ARKANSAS

5534 470 S.W. 2d 581

Opinion delivered September 20, 1971

*William E. Johnson,* for appellant.

*Ray Thornton,* Attorney General; *James A. Neal,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Leotis Brewer was convicted of second degree murder in the Ashley County Circuit Court and was sentenced to 21 years in the penitentiary. He has appealed to this court and relies on the following points for reversal:

> "The trial court erred in overruling appellant's motion for a directed verdict as to the charge of murder in the first degree, and in instructing the jury as to said charge over appellant's objection.
>
> The trial court erred in refusing to give appellant's requested instruction on misfortune or accident and in refusing to give any instruction on said defense.
>
> The trial court erred in refusing to give appellant's requested instruction on justifiable homicide, and in giving an incorrect and prejudicial instruction on said defense."

The facts as established by the evidence of record indicate that Brewer and the deceased, Pete Hadley, were at a tavern referred to as "Cox's Honkey Tonk" on the night of February 15, 1969. They both had been drinking. Brewer got into an argument with Eugene Morris and fired a pistol three times into the air inside the building. Brewer was standing near the door and was reloading his pistol when Hadley came near him. He kicked Hadley and threw a bottle at him. Hadley grappled with Brewer and wrestled him through the door. Brewer then threw a beer can at Hadley and then shot and killed him.

Margaret Allen Cox, the manager of the tavern, testified that she saw Brewer with a gun pointed at Morris and saw Brewer fire the weapon into the air. She testified that she went to call the police and that she only heard three shots fired.

Lee Charles Porter testified that Hadley and Brewer got into an argument; that Brewer kicked Hadley and threw a bottle at him; that Hadley then grabbed Brewer and threw him out the door; that Brewer then threw a can at Hadley and told him not to come any closer; that Hadley staggered toward Brewer and Brewer then shot and killed Hadley.

On direct examination this witness testified that after firing three shots into the ceiling of the tavern, Brewer reloaded the pistol; that after reloading the pistol Hadley went close to Brewer and Brewer kicked Hadley, and after they got outside Brewer threw a can at Hadley with his right hand while still holding the pistol in his left hand. This witness then testified as follows:

"Q. Then what happened?

A. Pete's foot got hung in the porch out there and he fell and when he got up, he got up with his hands up. He got a can and throwed at him.

A. Who threw a can?

A. Brewer did, at Pete. He missed him. Pete was standing back there with his hands up like that. He told him, "Don't come closer.' When he throwed the can, Pete staggered closer and he shot him. When Pete fell, he told him if he'd move he'd kill him.

Q. You heard Leotis say that to Pete Hadley?

A. Yes, sir.

Q. 'If you move, I'll kill you.'?

A. Yes, sir.

Q. That was after he shot him?

A. Yes, sir.

Q. Was there any shooting before that?

A. He was shooting around the place there..

Q. Who was?

A. Brewer.

\* \* \*

Q. And did you see anything in Pete Hadley's hand?

A. No.

Q. He didn't have a bottle or anything in his hand?

A. No, sir.

Q. Did anybody throw anything at anyone. then?

A. Brewer threw a beer can at Pete and he ducked and staggered forward and when he staggered, that's when Brewer shot him.

Q. Was it a stagger or was Pete trying to charge him?

A. Well, it looked like a stagger to me.

Q. And you saw Pete fall to the ground and then you say that Leotis said, "If you move I'll kill you?'

A. Yes, sir.

Q. Did Pete move?

A. No, sir, he was dead."

On cross-examination this witness testified as follows:

"Q. Did you hear Leotis tell Pete, 'Don't come up on me.'?

A. No, sir.

Q. You didn't hear words to that affect?

A. No, sir.

Q. Is it possible that it was said and you not hear it? Were you far enough away that you might not have heard it?

A. I was close enough to hear everything.

Q. Leotis did not tell Pete that?

A. No, sir.

A. You never heard them say anything to each other?

A. After he shot him he said something.

Q. That's when he said about killing him if he moved?

A. Yes, sir.

Q. Did he kick him?

A. Yes, sir.

Q. What else did he do?

A. He kicked him and Pete didn't move and he just took off running.

Q. Leotis took off running?

A. Yes, sir.

Q. What did he do with the gun?

A. Kept the gun in his hand. I don't [know] what he do with it after he left."

Odell Warren testified that after Brewer fired shots inside the tavern he reloaded the pistol and went outside and that Hadley went out behind him. He testified that he saw Brewer throw a can at Hadley then "jump back" and shoot Hadley. He says that Hadley had his hands up and they were empty.

Eddie Porter testified, in part, as follows:

"Q. Tell the jury exactly what you saw?

A. When I walked up, I seen Brewer pick up a can or something and throw it at Pete, Pete throwed his hand up and stepped back and at that time the gun went off and Pete fell. That's all I seen.

Q. Who had the gun?

A.  Brewer.

Q.  was he holding the gun on Pete when he threw the can at him?

A.  He had it in his left hand and he reached down and picked up the can and throwed it. Pete throwed his hands up and at that time the gun went off and Pete fell and I turned and walked off."

Brewer testified in his own defense. He testified that he was drinking on the night in question and did not remember firing the gun inside the tavern. He did remember an argument with Eugene Morris over a dollar Morris owed him. He testified that after having an argument with Eugene Morris his (Brewer's) brother and someone else came up and took him out of the tavern. He says that Pete Hadley followed him outside cursing him; that they got to arguing back and forth, and he then testified as follows:

"A.  I could see one of his hands in his pocket. I had my gun in my back pocket. When I seen his hands in his pocket and he started up on me and I told him not to come up on me. When he started up on me, he made a step forward, I already had my hand back like this and I just throwed it up.

Q.  You pulled the gun out and shot?

A.  I didn't even know the gun was loaded, because a boy just had pawned me the gun.

                    *    *    *

Q.  What did you reach in your pocket and pull that gun out for?

A.  To try to scare him back off.

Q.  Were you scared of him?

A. Sure.

Q. Why?

A. He was a bigger man than I was and I know what he would do if he got his hands on me.

\* \* \*

Q. Did you intend to shoot Pete Hadley?

A. Not exactly, no, sir.

Q. What do you mean?

A. What I was going to do was try to scare him back.

Q. Did you mean to pull the trigger and shoot anywhere?

A. No, sir, I was just going to pull it and let him see the gun.

Q. Just to scare him?

A. Yes, sir.

Q. Did you intend to kill Pete Hadley?

A. No, sir.

Brewer's 20 year old brother testified that he and his father took Brewer outside the tavern and that when Hadley came out of the tavern he thought Hadley might have something in his hand to hurt Brewer with, so he released Brewer and had started walking away when he heard the shot that killed Hadley.

The information filed by the prosecuting attorney is in the following form:

"\* \* \* I, Frank Wynne, Prosecuting Attorney with-

in and for the tenth judicial circuit of the state of Arkansas, of which Ashley County is a part, in the name and by the authority of the State of Arkansas, on oath, accuse the defendant Leotis Brewer of the crime of murder committed as follows, to-wit: The said defendant on the 15th day of February, 1969, in Ashley County, Arkansas, did unlawfully, wilfully and with malice aforethought, shoot and kill PETE HADLEY with a 32 calibre pistol, against the peace and dignity of the State of Arkansas. * * *''

The attorney for Brewer filed a motion for a bill of particulars as follows:

''* * * Comes the defendant, LEOTIS BREWER, by and through his attorney, and for his Motion, states: That the Information filed herein charges defendant with murder; that the State should be required to file a Bill of Particulars setting forth the following:

(a) The exact manner in which the alleged murder was committed. . .''

A response to the motion was filed as follows:

''* * * In response to item one, we report that the Death of Pete Hadley occurred on Feb. 15, 1969. That the death occurred as follows: Leotis Brewer went to Cox's Honky Tonk in Montrose, Ark. and began to dun one Eugene Morris for $1.00 Dollar that Eugene Morris owed him. That Pete Hadley was asleep on a small bed next to the wall and was not having anything to do with the argument between Eugene Morris and Brewer; That Brewer pulled out a 32 Cal Pistol, and fired it one time at the feet of Eugene Morris. He then shot 3 times into the ceiling. When this happened, Pete Hadley, got up, and walked passed them and went outside. Leotis Brewer then followed Pete outside and started to curse Pete. He then pointed the 32 pistol at Pete and fired one time; hitting him in the left shoulder, causing his death. * * *''

Brewer was charged with the crime of murder, which is defined in Ark. Stat. Ann. § 41-2201 (Repl. 1964) as follows:

"Murder is the unlawful killing of a human being, in the peace of the State, with malice aforethought, either express or implied."

By statute the crime of murder is broken down into two degrees as follows:

§ 41-2205 "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree."

§ 41-2206 "All other murder shall be deemed murder in the second degree."

There is a lesser degree of homicide defined in our statutes as manslaughter. Section 41-2207 is as follows:

"Manslaughter is the unlawful killing of a human being, without malice express or implied, and without deliberation."

Manslaughter is also broken down into two degrees as voluntary manslaughter, § 41-2208, and involuntary manslaughter, § 41-2209. Manslaughter is actually a degree of murder less than second degree. *Ellis* v. *State*, 234 Ark. 1072, 356 S. W. 2d 426. Ark. Stat. Ann. § 43-2149 (Repl. 1964) provides as follows:

"Upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree not higher than that charged in the indictment, and may be found guilty of any offense included in that charge in the indictment."

This section is followed by § 43-2150, as follows:

"The offenses named in each of the subdivisions of this section shall be deemed degrees of the same offense, in the meaning of the preceding section:

First.—All offenses of homicide.

\* \* \*

Sixth.—An offense, and an attempt to commit the offense. Offenses punished capitally are of the highest degree; other felonies are of higher degree than misdemeanor; and those punished by imprisonment of higher degree than those punished by fine alone. *Where the punishment is the same in kind, the amount that may be inflicted fixes the degree."* (Emphasis added).

Ark. Stat. Ann § 43-2152 is as follows:

"The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the court shall impanel a jury and examine testimony, and the degree of crime shall be found by such jury."

Section 43-1012 is as follows:

"No indictment is insufficient, nor can the trial, judgment, or other proceeding thereon, be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merit."

Finally, Initiated Act No. 3 of 1936, Ark. Stat. Ann. § 43-1006 (Repl. 1964) provides as follows:

"The language of the indictment must be certain as to the title of the prosecution, the name of the court in which the indictment is presented, and the name of the parties. It shall not be necessary to include statement of the act or acts constituting the offense, unless the offense cannot be charged with-

out doing so. Nor shall it be necessary to allege that the act or acts constituting the offense were done wilfully, unlawfully, feloniously, maliciously, deliberately or with premeditation, but *the name of the offense charged in the indictment shall carry with it all such allegations.* The State, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction." (Emphasis added).

The jury was instructed on first and second degree murder, as well as voluntary and involuntary manslaughter.

In support of his first point, Brewer argues that the information only charged him with "murder," and that the specific words employed in the information ("unlawfully, wilfully and with malice aforethought") are the elements of second degree murder and not first degree. He contends that before the information can support a charge of first degree murder it must recite the additional elements ("premeditation and deliberation") necessary to that degree of homicide. He argues, therefore, that he was only charged with second degree murder and that the trial court erred in overruling his motion for a directed verdict on first degree murder. Brewer's motion for a directed verdict appears in the following language:

"Your Honor, I would like at this time to move that the charges against the Defendant be dismissed, because the State has failed to prove their case beyond a reasonable doubt. They have failed to meet their burden of proof. And, in the alternative, I move that the charge of first degree murder be dismissed against the Defendant, because the State has failed to prove their case on this point beyond a reasonable doubt."

The motion as renewed at the close of all the evidence appears in language as follows:

"I would like to renew my motion for a directed

verdict and my motion for a dismissal of the charges against the Defendant.

\*    \*    \*

". . . I would also like to renew my motion for dismissal of the charge of first degree murder against this defendant, that the jury be given no instructions regarding first degree murder, because the evidence in the case as a matter of law does not prove the necessary elements for that offense."

Brewer argues that the language of an information should charge an offense with such certainty as to give the defendant notice of the charge he is called to face, and that it was error for the trial court to instruct the jury on first degree murder when a lower degree of homicide was charged in the information. He further argues that even if the information had clearly charged murder in the first degree, the trial court erred in refusing to direct a verdict as to said degree, and in instructing the jury thereon, because the state failed to prove him guilty of first degree murder beyond a reasonable doubt.

Brewer filed a request for a bill of particulars as above set out and as he had a right to do under the statute, § 43-1006. His request for a bill of particulars was complied with, as above set out, and apparently to his satisfaction.

It is perfectly clear from the motions for dismissal that Brewer knew that he was charged with first degree murder. He argues here, however, that the trial court erred in giving an instruction on first degree murder because the state failed to prove him guilty of first degree murder beyond a reasonable doubt.

It would appear that Brewer overlooks the fact that he was not found guilty of first degree murder but was only found guilty of second degree murder. He is in no position to complain of the trial court's failure to direct a verdict for him as to the charge of first degree murder

when the jury acquitted him of that degree by its verdict. Neither is Brewer in a position to assert reversible error in giving the instruction on first degree murder because the state failed to prove him guilty of first degree murder beyond a reasonable doubt, when the jury completely agreed with him on that point and he stands acquitted of the charge of first degree murder by the jury verdict of guilty on the lesser charge of second degree murder. *Easley* v. *State,* 109 Ark. 130, 159 S. W. 36; *Carlton* v. *State,* 109 Ark. 516, 161 S. W. 145; *Paul* v. *State,* 125 Ark. 209, 188 S. W. 555; *Wilson* v. *State,* 126 Ark. 354, 190 S. W. 441; *Hays* v. *State,* 129 Ark. 324, 196 S. W. 123; *Jordan* v. *State,* 141 Ark. 504, 217 S. W. 788; *Witham* v. *State,* 149 Ark. 324, 232 S. W. 437; *Bird* v. *State,* 154 Ark. 297, 242 S. W. 71; *Williams* v. *State,* 162 Ark. 285, 258 S. W. 386; *Sullivan* v. *State,* 163 Ark. 353, 258 S. W. 980; *Daniels* v. *State,* 182 Ark. 564, 32 S. W. 2d 169; *Mustain* v. *State,* 189 Ark. 887, 75 S. W. 2d 800; *Bone* v. *State,* 200 Ark. 592, 140 S. W. 2d 140; *Edwards* v. *State,* 208 Ark. 231, 185 S. W. 2d 556; *Wootton* v. *State,* 232 Ark. 300, 337 S. W. 2d 651.

Brewer has certainly shown no prejudice to his substantial rights by the information and the instructions thereon in the case at bar. He argues that the information only charged second degree murder. Brewer was only found guilty of second degree murder. The court properly instructed the jury on all the degrees of homicide within the charge of "murder," and there was sufficient evidence to sustain the conviction of murder in the second degree.

As to Brewer's second point, Ark. Stat. Ann. § 41-116 (Repl. 1964) provides as follows:

"Acts committed by misfortune or accident, shall not be deemed criminal, when it appears there was no evil design, intention, or culpable negligence."

We are of the opinion that the evidence did not justify an instruction on misfortune or accident. The early case of *McAdams* v. *State,* 25 Ark. 405, involved substantially the same questions of law as does the case at

bar. In that case the appellant stood *convicted* of murder in the first degree on an indictment charging murder. In that case the appellant requested, and the trial court refused to instruct the jury,

> " 'That, if the jury believe from the evidence, that the killing was accidental, and without any willful and malicious intent, they must acquit the prisoner.' "

In disposing of the point raised on appeal, this court said:

> "From a careful examination of the testimony brought up by the record, we find none to support this instruction. We think the testimony so clearly opposed to the instruction, that it seems that the jury could not have drawn an inference of accident from it, and the only effect the instruction could have had, would have been to mislead the jury. This court held, in the case of *Saddler* v. *Saddler,* 16 Ark. 628: 'That it is error in the court to give an instruction not warranted by the testimony, and which may mislead the jury.' See *Worthington* v. *Card* [*Curd*], 15 Ark. 492 [491]."

In *Casteel* v. *State,* 73 Ark. 152, 83 S. W. 953, relied on by Brewer, the testimony was considerably different from that in the case at bar. In *Casteel* the appellant testified that he and the deceased were the best of friends; that he fired his pistol into the ground as a part of a fireworks display on Christmas and didn't even see the deceased at the time he fired the weapon, and had no knowledge that the deceased had been shot until someone told him. He then told the deceased how sorry he was and assured him that he would take care of all medical expenses. In the case at bar Brewer testified that after arguing with Hadley he told Hadley to stay away from him; that Hadley had his hand in his pocket and he knew Hadley carried a knife. He says that Hadley was larger than himself and that he knew what Hadley would do to him if he got his hands on him. He testified that he did not *exactly* intend to shoot Hadley, but

only intended to scare him off with the pistol. He testified that he was afraid of Hadley. The appellant, in no event, would have been entitled to an instruction on homicide by misfortune or accident under Ark. Stat. Ann. § 41-116 (Repl. 1964) unless it appeared that there was no evil design, intent, or culpable negligence. Even though the appellant testified to the effect that he had no intention of shooting the deceased, when his testimony is given its strongest probative force, there is nothing in that testimony which eliminates culpable negligence on his part in the handling and discharge of the weapon.

As to Brewer's third point and last assignment of error, his requested instruction No. 1 is as follows:

"An attempt to commit any aggravated felony upon the person of another shall be justification for homicide. If you find that, under the circumstances, Leotis Brewer reasonably feared that Pete Hadley was attempting to commit an aggravated felony on his person, and that Leotis Brewer killed Pete Hadley while acting under the influence of such fears, or if you have a reasonable doubt in your minds as to whether Leotis Brewer was justified in his actions, then you will find Leotis Brewer not guilty."

This instruction tells the jury that if they have any reasonable doubt as to whether Brewer was *justified* in killing Hadley, then they should find Brewer not guilty. The fallacy in this offered instruction is obvious.

The testimony of Brewer and his brother that they thought the deceased might have a knife and was about to assault Brewer, was the only evidence indicating self-defense, and was the only evidence that entitled Brewer to an instruction on justifiable homicide. The court gave two instructions on this point, as follows:

"Justifiable homicide is the killing of a human being in necessary self-defense of one's person, his home or his property, against one who manifestly intends or endeavors by violence or surprise to kill him or to cause him bodily injury or defile his home

or forcibly take his property.

If a person kills another in self-defense, then he shall not be deemed guilty of any crime. If you believe from the evidence that Leotis Brewer had reasonable cause to believe that Pete Hadley was approaching him with intent to take his life or to commit an aggravated assault on his person, and the danger was eminent and that he had done all he could to avoid the difficulty without retreating, then you will find Leotis Brewer not guilty."

Brewer contends that the trial court merely instructed the jury on the definition of justifiable homicide and failed to advise them that justifiable homicide is a defense. The second of the above instructions negates this contention. Brewer also contends that the court's instruction makes it appear that the killing must be actually necessary in order to constitute justifiable homicide. We do not agree. The second of the above instructions also negates this contention.

The judgment is affirmed.